UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

URBAN JUSTICE CENTER – SAFETY NET
PROJECT, et al.,

                              Plaintiffs,

          -against-

THE CITY OF NEW YORK, et al.,

                              Defendants.

**[Proposed] Stipulated Order**

24-CV-8221 (JGK)

## STIPULATED PRELIMINARY INJUNCTION

### RECITALS

**WHEREAS**, Plaintiffs and Defendants City of New York, Eric Adams, Molly Wasow Park, Joslyn Carter, Javier Lojan, Jessica Tisch, Thomas G. Donlon, Sue Donoghue, Ydanis Rodriguez, Andrew Kimball, and the New York City Economic Development Corporation (collectively "City Defendants") hereby jointly stipulate to the preliminary injunction stated below, to be so-ordered by the Court (hereinafter "Order"); and

**WHEREAS**, the City Defendants shall comply with the Encampment Cleanup and Voucher Procedure ("ECVP"), which is attached as Exhibit 1, and any changes to it set forth in this Order.  To the extent there is a conflict between this Order and the ECVP, this Order shall govern; and

**WHEREAS**, this Order will take effect immediately after So-Ordered by the Court, and it shall remain in effect for nine (9) months from the date it is So-Ordered, except as further ordered by this Court; three months before the scheduled expiration of this Order, the Plaintiffs and City Defendants shall engage in good faith to discuss the possible length and terms of a possible

extension of this Order; and

**WHEREAS**, this Stipulation is without prejudice to the respective arguments and legal positions of the parties with respect to the claims and defenses previously raised in this case and without any party waiving any argument or right to request modifications or clarifications of this Order as circumstances may warrant; and

**NOW, THEREFORE**, Plaintiffs and City Defendants agree as follows:

## **TERMS**

1.      The City Defendants will not conduct "Standard Cleanups," which, as contemplated by the ECVP, are cleanups of homeless encampment sites conducted after notice has been provided, unless the City provides a minimum of seven days' notice identifying the specific date the cleanup will occur.

2.      The City Defendants will not conduct "Emergency Cleanups" without notice, unless the City has identified immediately hazardous conditions that will likely cause imminent harm to occupants[1] and/or members of the public, including but not limited to the following circumstances:

   a.   On-site hazards (e.g., tapping power lines); or

   b.   Encampment in a high-traffic area that constitutes a hazardous condition that will likely cause imminent harm to occupants and/or members of the public; or

   c.   Illegal, unsanitary, or unsafe structures that constitute a hazardous condition that will likely cause imminent harm to occupants and/or members of the public; or

---

[1] For purposes of this Stipulation, "Occupants" refers to individuals who inhabit the encampments that are subject to the cleanup.

      d.   Location within a playground; or

      e.   Syringes or other dangerous drug paraphernalia on site.

3.     Upon a written request by the Urban Justice Center-Safety Net Project ("UJC-SNP") prior to the posting of a cleanup notice, the City Defendants shall provide notice to UJC-SNP of any and all "Standard Cleanups," including for a specified location and/or time period, within 24 hours after posting, excluding weekends and holidays.  Where UJC-SNP requests notices of "Standard Cleanups" after the date of posting but before the cleanup, the City Defendants shall provide the notice to UJC-SNP within 24 hours after the request, excluding weekends and holidays. Where UJC-SNP requests notices of "Standard Cleanups" that have already occurred, City Defendants shall provide the notices to UJC-SNP within one week of the request or, where City Defendants require additional time to produce the requested notices, within a timeframe determined by mutual agreement between Plaintiffs and City Defendants.  UJC-SNP will not broadly disseminate copies of the notices, including by posting in public forums.

4.     The City Defendants shall provide reports to Plaintiffs' counsel on the dates of, locations of, and basis for "Emergency Cleanups" on a bi-weekly basis, including factual details of the alleged conditions that gave rise to the need for an "Emergency Cleanup" (i.e., City Defendants' justification for the cleanup), as well as at least one corresponding pre-cleanup photo of the alleged condition at such cleanup sites.  Pre-cleanup photos must show as much of the whole site immediately prior to the "Emergency Cleanup" as possible and any of the encampment's setting relevant to the need for a cleanup.

5.     During Emergency and Standard Cleanups City Defendants shall not unreasonably restrict occupants from gathering, organizing, or removing their items from the immediate area of the cleanup site, and shall not commence searching, inspecting, sorting, or removing items from

the cleanup site until occupants have had a reasonable opportunity to do so.  City Defendants shall not place restrictions based on the type of items that may be removed, whether or not eligible for storage, to the extent they are not illegal for the occupant to possess under New York City, State or Federal law. Nothing herein shall prevent City Defendants from inspecting, removing, and/or discarding items to address an immediately hazardous condition that will likely cause imminent harm to occupants or members of the public. City Defendants shall not dispose of items at a cleanup site that are able to be vouchered and stored pursuant to the ECVP; however, City Defendants will not voucher items from a cleanup where an occupant has expressly declined an offer to voucher items or affirmatively states that the items are not wanted. During a cleanup, City Defendants will make efforts to ensure that occupants take their essential items, including but not limited to medications, identification documents, government agency documents, prescriptions, coats and sleeping bags.

6.    During a cleanup where an occupant is not present at the cleanup site:

a.    City Defendants shall store and voucher all "eligible property" found at the cleanup site pursuant to the procedures set out in the ECVP and/or applicable NYPD storage policies.

b.    When there are items at a cleanup site to be vouchered that are identifiable, the New York City Department of Homeless Services ("DHS") shall store such items in accordance with the ECVP, which includes items located at sites where City Defendants know the identity of the occupant of the cleanup site.

7.    Items from a cleanup vouchered by DHS shall be returned in accordance with the procedures set forth in the ECVP and paragraph 15 herein.  Items from a cleanup vouchered by NYPD shall be returned in accordance with NYPD's rules and policies for the return of such

4

property including those set forth in Title 38, Section 12 of the Rules of the City of New York.

8.    City Defendants shall leave a notice after conducting a cleanup ("Post-Cleanup Notice") at the cleanup site. The Post-Cleanup Notice will state the date and location of the cleanup, indicate whether items were in fact vouchered and by which agency, and provide information on how to retrieve such items. The Post-Cleanup Notice shall also indicate whether no items were vouchered.

9.    All Notices of "Standard Cleanups" and Post-Cleanup Notices will be securely affixed in a clearly visible manner and include information in multiple different languages about how to obtain a full translation of the notice and a list of DHS drop-in centers where occupants may use a phone to access information about vouchered belongings.

10.    For all cleanups where occupants were not on site, City Defendants will make available to Plaintiffs' Counsel, on a monthly basis: (a) a copy of the Post-Cleanup Notice; and (b) at least one corresponding pre-cleanup photo of the site showing as much of the whole site that was subject to the cleanup as possible.

11.    "The List of Property Eligible for Storage" in the ECVP shall be expanded to include the following, to the extent not otherwise deemed ineligible as set forth in the ECVP:

    a.    small appliances that are in good condition as determined in good faith and consistent with the ECVP by the cleanup team (items with frayed cords or other damage that may present a safety concern, in the discretion of the City staffers present, will not be vouchered);

    b.    liquid hygiene products that are clearly identifiable as such and appear to have contents that are consistent with the label, as determined in good faith and consistent with the ECVP by the cleanup team; and

    c.    bedding, clothing, personal effects, and other items that reasonably appear

to be the personal property of a known occupant as determined in good faith and consistent with the ECVP by the cleanup team.

12.     The City shall train its ECVP cleanup teams regarding the changes to the ECVP, as set forth in this Order within four weeks of this Order being So-Ordered.  Such training will include:

    a.  Instruction that to the extent other individuals volunteer and are ready and willing to help an occupant move their belongings, they may do so, and that there are no restrictions based on the type of items  that may be removed by an occupant or anyone assisting them during a cleanup to the extent they are not illegal for the occupant to possess under New York City, state or federal law.

    b.  Instruction that cleanup teams shall not unreasonably restrict occupants from gathering, organizing, or removing their items from the immediate area, and shall not commence searching, inspecting, sorting, or removing items from the site until occupants have had a reasonable opportunity to do so.

    c.  Instruction that cleanup teams are to make efforts to ensure that occupants take their essential items, including but not limited to medications, identifying documents, government agency paperwork, prescriptions, coats and sleeping bags.

    d.  Instruction that, where an owner of certain property is not present, others who are present during a "cleanup" may identify that the items belong to another occupant so eligible property may be considered "identifiable" and vouchered by DHS.

    e.  Instruction that cleanup teams are to consider observable limitations of occupants when implementing the requirement that they shall not unreasonably restrict occupants from gathering, organizing, or removing their items from the immediate

area.

13.     City Defendants agree to make good-faith efforts to commence implementation of this agreement upon So Ordering, and Plaintiffs agree that they will not seek relief for any purported non-compliance with the provisions for which training will be required as provided in paragraphs 12(a)-(e) that occurred during the four weeks after this Order being So-Ordered.

14.     Upon receipt of notice from Plaintiffs' counsel and satisfactory proof, as determined by City Defendants, which may include but is not limited to photographic and/or video proof or a statement from an individual who experienced and/or witnessed the cleanup, that a cleanup team has failed to comply with this Order, City Defendants agree to re-train cleanup teams operating in the relevant area within four weeks of receiving such notice.  Such re-training, however, shall not be admissible as proof of City Defendants' alleged violation of City, State, or Federal law, or this Order.

15.     DHS shall consider and may grant reasonable requests to extend the 90-day storage period set forth in section D(4) of the ECVP.  When coordinating the return of property vouchered by DHS as set forth in section D(5) of the ECVP, DHS will coordinate a time and place within New York City for it to deliver the vouchered items to their owner.

16.     Where this Order requires the City Defendants to produce any new materials or notices, update any materials or notices, or provide updated training to cleanup teams, City Defendants shall complete the required production, updating, and training within four weeks of it being So-Ordered. City Defendants shall provide Plaintiffs with copies of any newly-created or updated materials, including updated training materials produced to ensure compliance with Paragraph 12 of this Order, within four weeks of it being So-Ordered.

17.     To the extent Plaintiffs believe that the City Defendants have not complied with the

ECVP or this Order, Plaintiffs shall provide City Defendants' counsel with written notice of any such allegations, including the time, date, and location of the alleged non-compliance to the best of Plaintiffs' knowledge, and—where Plaintiffs determine it is feasible to provide such information—any identifying information for alleged affected encampment occupants, and agree to meet and confer with City Defendants' counsel in good faith in an effort to resolve any proposed motion for non-compliance within three business days of such notice to the City Defendants before seeking any relief from the Court.  Such procedure shall be a condition precedent before any Plaintiff files a motion for non-compliance herein.

18.    Nothing contained herein shall be construed as an admission of liability or fault by the City Defendants.

19.    This Order shall not be effective unless signed by Plaintiffs' counsel, City Defendants' counsel, and ordered by the Court.

20.    This Order shall expire by its own terms nine (9) months from the date on which it is So-Ordered, unless there is a further order from the Court.

21.    The parties have reviewed and revised this Order, and no rule of construction by which any ambiguities are to be resolved against the drafting party shall be applied in the interpretation of this Order.

22.    This Order contains all the terms and conditions agreed upon by the parties hereto; no oral agreement entered into at any time, nor any written agreement entered into prior to the execution of this Order regarding the subject matter of the instant proceeding, shall be deemed to exist, or to bind the parties hereto, or to vary the terms and conditions contained herein.

Dated: September 24, 2025
      New York, New York

URBAN JUSTICE CENTER – SAFETY
NET PROJECT


Marika Dias
Estee Konor
40 Rector St, 9th Floor
New York, NY 10006
P: (646) 923-8357
E: mdias@urbanjustice.org

NATIONAL HOMELESSNESS LAW
CENTER


Siya U. Hegde
1400 16th Street NW, Suite 425
Washington, DC 20036
P: (202) 638-2535, Ext. 105
E: shegde@homelesslaw.org


BELDOCK LEVINE & HOFFMAN, LLP


Keegan Stephan
Luna Droubi
99 Park Avenue, PH/26th Floor
New York, New York 10016
P: (212) 277-5820
F: (212) 277-5880
E: kstephan@blhny.com

*Attorneys for Plaintiffs*

MURIEL GOODE-TRUFANT
CORPORATION COUNSEL OF THE CITY
OF NEW YORK
Attorney for Defendants City of New York
and New York City Economic Development
Corporation


*Kerri A. Devine* /s/
Kerri A. Devine
Assistant Corporation Counsel
100 Church Street, Room 5-175
New York, New York
(212) 356-2241
Kdevine@law.nyc.gov

Dated:
     New York, New York

SO ORDERED

_____
John G. Koeltl, U.S.D.J.

# **EXHIBIT 1**



# OFFICE OF POLICY, PROCEDURES AND TRAINING

**Department of
Homeless Services**
Department of
Social Services

DHS-PB-2024-011

| Subject: | Applicable To: | Effective Date: |
|---|---|---|
| Encampment Cleanup and Voucher Procedure | DHS Street Homeless Solutions Division and Street Outreach Providers | June 17, 2024 <br><br> Replaces: Procedure DHS-PB-2022-009 |

| Administered By: | Approved By: |
|---|---|
| DHS Street Homeless Solutions Division | Joslyn Carter, Administrator Department of Social Services/Department of Homeless Services |

## ■ BACKGROUND

In New York City, people who are unsheltered gather, live, and camp in a variety of places. Historically, there have been several dozen homeless encampments and hotspots across the city. Some of these locations are quiet and offer privacy; others are in the center of busy urban life. People can gather in groups of three to five, and sometimes as many as 15-20.

An encampment can consist of temporary structures used for shelter, people gathered with their personal belongings, and continuous use of a place not meant for people to live. Some encampments are seasonal; others are active all year. People staying in encampments are resourceful. They may use cardboard, tents, or cars for sleep. They may have mattresses or other furniture and rely on nearby power supplies for electricity.

The Department of Homeless Services (DHS) monitors known hotspots by having outreach teams regularly visit and connect people who are unsheltered to social services, emergency shelter, and permanent housing. DHS also performs cleanups to reduce health and safety risks from garbage, debris, hazardous materials, and other unsanitary conditions.

## ■ PURPOSE

This procedure explains the process developed by DHS and its partner agencies to meet the following goals:

    **A. Assess and provide compassionate, resource-intensive outreach** to help unsheltered people access social services, i.e., shelter, financial support, or help with health and mental health issues and substance use/abuse issues;

B. **Clear temporary physical structures** (e.g., encampments, tents, cars, cardboard boxes) in public spaces not meant for people to live; and

C. **Supply limited, temporary storage for eligible personal items** removed from encampment sites and stored safely for up to 90 days

■ **DEFINITIONS**

A. **Encampment** – A fixed or temporary physical structure built or set up as a shelter or dwelling in an area not meant for people to live, such as areas without sanitation services, water, trash removal, etc.

B. **Hotspot** – An area not meant for people to live where groups of people who are unsheltered gather regularly.

C. **Pop-up** – An area not meant for people to live where individuals and groups regularly sleep without fixed comforts (e.g., furniture, standing structures, curtains, mattresses).

D. **Cleanup** - A multi-agency operation to address illegal, unsanitary, or unsafe street conditions AND give people who are unsheltered access to social services, housing, and other help.

E. **Emergency cleanup** - A multi-agency cleanup operation done without notice or with minimal prior notice due to conditions that pose a potential health and safety risk to people who live there or the public.

■ **PROCEDURE FOR HOTSPOT, POP-UP, AND ENCAMPMENT CLEANUP**

A. **Assessment**

The DHS Joint Command Center (JCC) receives regular requests to assess areas that may be hotspots, pop-ups, or encampments. These requests often come through 311 or to the JCC directly in various ways, including email or telephone.

When the JCC receives an assessment request, it sends out a DHS or provider outreach team. The team canvasses the site, engages anyone there about services available through DHS, takes photos (avoiding photos of undressed people when possible), and reports findings back to the JCC manager on duty. The JCC then shares the findings with the New York City Police Department (NYPD) who decides which sites to clean up.

If a site is an encampment, hotspot, or pop-up, JCC staff record the address or site description to help with outreach team assignment and to schedule a cleanup if needed. Outreach teams may visit sites daily depending on staff availability.

## B. Cleanup Preparation

The JCC coordinates with City agencies and others, such as the Department of Sanitation (DSNY) and NYPD before the cleanup, including the agency with jurisdiction over the site (e.g., Department of Parks and Recreation), the property owner if applicable, or syringe disposal team. Coordination may include provider outreach teams, especially if they already have a relationship with anyone at the site or are well-known in the area.

### 1. Emergency Cleanup

An emergency cleanup happens under these circumstances:

    a. On-site hazards (e.g., tapping power lines)
    b. Encampment in a high-traffic area
    c. Illegal, unsanitary, or unsafe structures
    d. Location within a playground
    e. Syringes or other dangerous drug paraphernalia on site
    f. Request by Commissioner-level City official or above

The JCC schedules an emergency cleanup on the day it receives a service request. Under this expedited process, no prior written notices are necessary at the site. The manager on duty sends an outreach team before cleanup to inform occupants and talk to them about services they can get through DHS. Otherwise, an emergency cleanup works the same as a standard cleanup.

NOTE: If the "emergency" categorization relates to syringes at the site, a special syringe removal team comes in from DSNY or other DHS partner organization.

### 2. Standard Cleanup

The JCC cleaning liaison schedules cleanup dates to give outreach teams enough time to visit and offer services. Typically, the cleanup happens 48-96 hours after the scheduling date. This gives staff time to hand out and post notices, as well as talk to clients about their options and answer questions.

## C. Notices

After site assessment and cleanup scheduling, outreach teams visit the site to hand out the **Notice of New York City Cleanup** (DHS-46) (**"Notice"**). Staff use this time to interact with people onsite. The outreach team also posts the **Notice** where occupants and the general public can easily see it. Staff post **Notices** with both sides showing to help people get the information in their preferred language. Outreach teams may also explain the **Notice** information to people during visits and on the cleanup date.

**NOTE:** When posting the **DHS-46** for a standard clean-up, the "Date" field must be the date of the posting and the "Beginning" field must be the date when the standard cleanup will commence. These dates must be at least 14 days apart.

## D. Cleanup Process

At the time of cleanup, all involved agencies will meet near the site to arrive together. When occupants are on site, the outreach team will talk about social services and explain the cleanup process. They advise everyone to hold onto important documents and anything valuable because things left behind may be discarded. Outreach teams make every effort to explain how to store and voucher property (See Personal Property Vouchers and Storage below).

**NOTE**: DSNY does not engage with site occupants. Once occupants leave the site, DSNY starts the cleanup and discards what remains.

### 1. Personal Property Vouchers and Storage

When the City conducts a cleanup, DHS must use best efforts to retain and voucher occupants' eligible personal property for temporary storage. DHS outreach teams must be in the immediate area during the cleanup to explain how to retrieve vouchered property and how to apply for a storage grant with HRA.

During the cleanup, if occupants cannot safely bring their personal belongings with them, outreach teams must give them information about vouchering and storing.

### 2. List of Property Eligible for Storage

- Personally identifiable papers and documents, such as photo ID (e.g., passports, driver's licenses), government-issued documents, birth certificates, bank statements, social security cards
- Prescribed medication with the occupant's name
- Jewelry or eyeglasses
- Medical equipment, such as walkers, crutches, wheelchairs, or other personal mobility item not clearly identified as property of a healthcare facility
- Backpacks, suitcases
- Functional electronics, like a mobile phone, tablet, or laptop
- Tents if functional, collapsible, or can be unassembled as long as it is transportable
- A functional bicycle not readily identifiable as property the City has an interest in (e.g., Citi Bike)
- Any other item of reasonable value that an occupant asks to store and can be stored safely and transported
- Locked containers may be stored at the agency's discretion

### 3. List of Property Ineligible for Storage

- Live unclaimed animals – DHS outreach/DSNY/NYPD will contact Animal Care and Control to pick up any live animals whose owner is not there during the cleanup
- Weapons or explosives

- Any item that is illegal under New York City, state, or federal law
- Visibly contaminated property (evidence of pest infestation, mold, human or animal waste)
- Non-medical foods or liquids of any kind, perishable or otherwise
- Furniture/small appliances
- Mattresses
- Shopping carts
- Tents that cannot be collapsed
- Equipment or devices readily identified as property of a healthcare facility or for which the City has a property interest
- Any property that is unsafe to store or is not transportable even if it has reasonable value
- Any combustible property such as lithium-ion battery powered devices

### 4.  Process to Identify and Store Eligible Property

DHS must supply free temporary storage for eligible items for 90 days from a person's request unless items cannot be stored safely or transported. **Staff must store eligible property if the occupant is on-site and agrees to or requests temporary storage.  If the occupant is off site and eligible property is identifiable (for example has a name that can be used to label such property) staff must store the property.**  If someone asks for more time, DHS will refer the occupant to the Human Resources Administration (HRA) to apply for a storage grant and permit the client's property to remain in storage during the application process.

When practical, DHS must photograph and label eligible property before storage. After 90 days, DHS will discard the property.

DHS will instruct DSNY to discard ineligible property during the cleanup. The process for storing eligible property and discarding ineligible property depends on if a person is on site when the cleanup happens.

### a.  Occupants On Site

During a cleanup, DHS will give occupants a reasonable amount of time to leave the immediate area and take their property. DHS outreach teams must ask remaining occupants with property in the immediate area if they want DHS to temporarily store their eligible property and give them information about applying for a storage grant with HRA.

If anyone agrees to have DHS temporarily store their eligible property, the DHS outreach team will contact the JCC and provide storage containers for packing. A DHS team member will review property as the occupant reviews it and will take these steps:

- Decide which items can be stored
- Inventory eligible items on the **DHS Cleanup Site Voucher** (**DHS-123**)
- Photograph items in the container
- Label the container and tape the voucher to the inside. Each label must include:
    - StreetSmart ID#
    - Name of the occupant/owner
    - Container number (if more than one container, label each container 1 of 2, 2 of 2, etc.)
- Seal the container, photograph the voucher, and give the voucher to the occupant. Staff must note the deadline to pick up their property and a number to call for more information.
- Print the photographed voucher at the office and place it in the occupant's file.

**NOTE:** DHS is not responsible for packing or handling property. Occupants must pack their own belongings.

The **DHS Cleanup Site Voucher (DHS-123)** for occupants who want to store eligible property with DHS requests the following:
- Occupant's name
- Date and location of the cleanup
- Description of eligible property stored and any details describing where it was before the cleanup
- Deadline for picking up eligible property and a clear statement that afterward, DHS will discard their property without further notice

## b. Occupants Not on Site

DHS outreach teams must leave the **Notice of New York City Cleanup (DHS-46)** posted at the site. The notice has information about where to find out about eligible property that DHS stored for them.

DHS will make reasonable efforts to identify readily apparent eligible property of anyone not there during the cleanup and store their property for up to 90 days.

Reasonable efforts do not include opening sealed, opaque, or locked containers. If DHS staff find large amounts of documents, they do not have to review them individually. DHS staff must treat documents as eligible property unless ineligible as defined above.

## 5. Picking Up Personal Property

When someone comes to pick up their belongings, DHS will ask for information to match the person with their property. If the person can identify the items, DHS will return their belongings to them. People can give their name, show their voucher, or give their voucher number.

If someone says they were gone during the cleanup and did not get a voucher, or lost their voucher, they must describe their items, the date of cleanup, or a reasonable time frame when they were collected, and a description of the location where collected. DHS will return property if the person gives enough details to confirm it is theirs. They must call JCC to coordinate pick up.

## E. **Close-out**

After cleanup, outreach teams will email a summary to the JCC manager on duty that may include the following:

- Site Location/Address/Time of Cleanup
- Cleaning partner (select one): DSNY, NYC Parks, NYC Department of Transportation (CDOT), New York State Department of Transportation (SDOT), NYC Economic Development Corporation (EDC)
- Number of clients interacted with or connected to social services
- Items vouchered
- Summary of the engagement activity

## ■ **PERENNIAL ENCAMPMENT CLEAN-UP**

Once an encampment site is cleaned, the city takes steps to prevent former occupants or other people from returning and reestablishing the encampment. A site prone to recurring encampment establishment will be deemed a perennial encampment, based on the following:

- observation of multiple instances of reestablished encampments at the same location within a 30- day period from the last cleanup; or
- observation of a subsequent encampment within a 250-foot radius of a previously cleaned encampment within a 30- day period.

To prevent the reestablishment of encampments, the city routinely monitors locations with recurring encampments and provides enhanced outreach services to occupants that includes the following:

- Extended public notification by posting of the "Notice of New York City Cleanup" (DHS-46) ("Notice") for up to 14 days prior to the cleanup.
- Deployment of Street Homeless Services Outreach staff at the location during the extended notification period subject to staff availability.
- If the encampment site or conditions poses an imminent risk to public health, safety, or security, the city may determine that a cleanup is required prior to the end of the extended notification period.
- Extended cleanup of the site at the same location or the surrounding 250-foot proximity where an encampment is re-established during a 30-day period.
- Prevent trespassing on their property within their authority and discretion.

■ **RELATED DOCUMENTS**
BK-37            Joint Command Center (JCC) Best Practices Guide
DHS-112a      Joint Command Center (JCC) Process Narratives and Workflows

■ **ATTACHMENTS**
**DHS-46**        Notice of New York City Clean Up
**DHS-123**      DHS Cleanup Site Voucher

 **Department of Homeless Services**
Department of Social Services

DHS-46 06/12/2024  MLF

## <u>NOTICE OF NEW YORK CITY CLEAN UP</u>

**NOTICE DATE:** _____

**LOCATION:** _____

Beginning _____, the City will complete a clean-up of this location. On that day, you must remove your belongings from this location. If you are not present during the clean-up any items remaining at the location may be removed.  If you need a copy of this notice that contains information about how to come inside, voucher or pick up your belongings from storage contact the Joint Command Center at 212-607-6040.

Items of readily apparent value or containing personal identifying information may be stored for safekeeping by the city. To make inquiries about property that may have been removed or stored, please contact the Joint Command Center at 212-607-6040.

DHS Outreach Teams will be available to assist you with services to come inside so that you do not have to remain on the streets. We will be back at this location in 24 hours or more.

If you would like access to DHS shelter services instead of the special help DHS Outreach Teams can provide, you can contact 311 or report to the appropriate shelter intake facility for

☐ Families with Children and Pregnant People:        **151 East 151st Street, Bronx, NY 10421**

☐ Single Men and Adult Families:        **400-430 East 30th Street, New York, NY 10016**

☐ Single Men:        **116 William Street, Brooklyn, NY 11207**

☐ Single Women:        **1122 Franklin Avenue, Bronx, NY 10456**

Some items, such as furniture, appliances, and large televisions, are not permitted in shelters because of space limitations and must be placed in storage, but we can help you with a storage grant. If you have an active Cash Assistance case, you can request a special storage grant on ACCESS HRA (www.nyc.gov/accesshra) any Benefits Access Center, listed on which are listed on https://www1.nyc.gov/site/hra/locations/job-locations-and-service-centers.page. Even if you do not have a Cash Assistance case, you can apply for an emergency grant on ACCESS HRA (www.nyc.gov/accesshra) or you can go to any Benefits Access Center. You will need to provide a list of items you are or will be storing and a bill if you have one. An open and active Cash Assistance case is not required to be eligible for storage funds. Please redeem recyclable bottles and cans in advance of the clean-up.

If you have any questions regarding this New York City clean-up and the special help that we can provide to you to come inside, please speak to an Outreach worker, or contact the DHS Street Homeless Solutions Unit by:

| | | |
|---|---|---|
| ☎ | ▶ **PHONE:** | _____ |
| ✉ | ▶ **EMAIL:** | _____ |
| | | or contact **311** by phone or app. |



**Department of
Homeless Services**
Department of
Social Services

DHS-123 (E) 06/12/2024 LLF

# DHS CLEANUP SITE VOUCHER

StreetSmart ID: _____    Property must be retrieved by: _____

Cleanup Date: _____    Cleanup Location: _____

Occupant Present: ☐ Yes ☐ No    Occupant Name: _____

Occupant Placed: _____    Date Placed: _____

DHS Staff Member: _____    Manager on Duty: _____

| PROPERTY INVENTORY | | | |
|---|---|---|---|
| ITEM NO. | QTY. | ITEM DESCRIPTION | COMMENTS |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

Briefly explain why property is being temporarily stored:

*__PROPERTY MUST BE RETRIEVED WITHIN 90 DAYS OF THE CLEANUP DATE ON THIS NOTICE.__*
*__IF PROPERTY IS NOT RETRIEVED BY _____ DHS WILL DISPOSE OF PROPERTY WITHOUT FURTHER NOTICE.__*

| PROPERTY RETRIEVAL |
|---|

To retrieve stored property, keep this notice. You must contact JCC to coordinate return of property. You must appear in person to retrieve property, and must present proper identification.

Authorized representatives must have a notarized letter authorizing them to act on your behalf. The authorized representative must present a notarized letter and proper identification with this voucher when retrieving property.

For more information regarding stored property please call DHS Joint Command Center (JCC) at (212) 607-6040.

Retrieved by Occupant/Representative: _____    _____
                                                                          Name                                    Date

DHS Staff Member: _____    _____
                                                        Name                                    Date

Manager on Duty: _____    _____
                                                        Name                                    Date