UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

URBAN JUSTICE CENTER – SAFETY NET PROJECT, et al.,

                                Plaintiffs,

-against-

THE CITY OF NEW YORK, et al.,

                                Defendants.

[Proposed] **Stipulated Order**

24-CV-8221 (JGK)

---

## STIPULATED PRELIMINARY INJUNCTION

### RECITALS

**WHEREAS**, Plaintiffs and Defendants City of New York, Eric Adams, Molly Wasow Park, Joslyn Carter, Javier Lojan, Jessica Tisch, Thomas G. Donlon, Sue Donoghue, Ydanis Rodriguez, Andrew Kimball, and the New York City Economic Development Corporation (collectively "City Defendants") hereby jointly stipulate to the preliminary injunction stated below, to be so-ordered by the Court (hereinafter "Order"); and

**WHEREAS**, the City Defendants shall comply with the Encampment Cleanup and Voucher Procedure ("ECVP"), which is attached as Exhibit 1, and any changes to it set forth in this Order. To the extent there is a conflict between this Order and the ECVP, this Order shall govern; and

**WHEREAS**, this Order will take effect immediately after So-Ordered by the Court, and it shall remain in effect for nine (9) months from the date it is So-Ordered, except as further ordered by this Court; three months before the scheduled expiration of this Order, the Plaintiffs and City Defendants shall engage in good faith to discuss the possible length and terms of a possible

1

extension of this Order; and

**WHEREAS**, this Stipulation is without prejudice to the respective arguments and legal positions of the parties with respect to the claims and defenses previously raised in this case and without any party waiving any argument or right to request modifications or clarifications of this Order as circumstances may warrant; and

**NOW, THEREFORE**, Plaintiffs and City Defendants agree as follows:

## TERMS

1. The City Defendants will not conduct "Standard Cleanups," which, as contemplated by the ECVP, are cleanups of homeless encampment sites conducted after notice has been provided, unless the City provides a minimum of seven days' notice identifying the specific date the cleanup will occur.

2. The City Defendants will not conduct "Emergency Cleanups" without notice, unless the City has identified immediately hazardous conditions that will likely cause imminent harm to occupants[1] and/or members of the public, including but not limited to the following circumstances:

    a. On-site hazards (e.g., tapping power lines); or

    b. Encampment in a high-traffic area that constitutes a hazardous condition that will likely cause imminent harm to occupants and/or members of the public; or

    c. Illegal, unsanitary, or unsafe structures that constitute a hazardous condition that will likely cause imminent harm to occupants and/or members of the public; or

---

[1] For purposes of this Stipulation, "Occupants" refers to individuals who inhabit the encampments that are subject to the cleanup.

    d. Location within a playground; or

    e. Syringes or other dangerous drug paraphernalia on site.

3. Upon a written request by the Urban Justice Center-Safety Net Project ("UJC-SNP") prior to the posting of a cleanup notice, the City Defendants shall provide notice to UJC-SNP of any and all "Standard Cleanups," including for a specified location and/or time period, within 24 hours after posting, excluding weekends and holidays. Where UJC-SNP requests notices of "Standard Cleanups" after the date of posting but before the cleanup, the City Defendants shall provide the notice to UJC-SNP within 24 hours after the request, excluding weekends and holidays. Where UJC-SNP requests notices of "Standard Cleanups" that have already occurred, City Defendants shall provide the notices to UJC-SNP within one week of the request or, where City Defendants require additional time to produce the requested notices, within a timeframe determined by mutual agreement between Plaintiffs and City Defendants. UJC-SNP will not broadly disseminate copies of the notices, including by posting in public forums.

4. The City Defendants shall provide reports to Plaintiffs' counsel on the dates of, locations of, and basis for "Emergency Cleanups" on a bi-weekly basis, including factual details of the alleged conditions that gave rise to the need for an "Emergency Cleanup" (i.e., City Defendants' justification for the cleanup), as well as at least one corresponding pre-cleanup photo of the alleged condition at such cleanup sites. Pre-cleanup photos must show as much of the whole site immediately prior to the "Emergency Cleanup" as possible and any of the encampment's setting relevant to the need for a cleanup.

5. During Emergency and Standard Cleanups City Defendants shall not unreasonably restrict occupants from gathering, organizing, or removing their items from the immediate area of the cleanup site, and shall not commence searching, inspecting, sorting, or removing items from

the cleanup site until occupants have had a reasonable opportunity to do so. City Defendants shall not place restrictions based on the type of items that may be removed, whether or not eligible for storage, to the extent they are not illegal for the occupant to possess under New York City, State or Federal law. Nothing herein shall prevent City Defendants from inspecting, removing, and/or discarding items to address an immediately hazardous condition that will likely cause imminent harm to occupants or members of the public. City Defendants shall not dispose of items at a cleanup site that are able to be vouchered and stored pursuant to the ECVP; however, City Defendants will not voucher items from a cleanup where an occupant has expressly declined an offer to voucher items or affirmatively states that the items are not wanted. During a cleanup, City Defendants will make efforts to ensure that occupants take their essential items, including but not limited to medications, identification documents, government agency documents, prescriptions, coats and sleeping bags.

6. During a cleanup where an occupant is not present at the cleanup site:

   a. City Defendants shall store and voucher all "eligible property" found at the cleanup site pursuant to the procedures set out in the ECVP and/or applicable NYPD storage policies.

   b. When there are items at a cleanup site to be vouchered that are identifiable, the New York City Department of Homeless Services ("DHS") shall store such items in accordance with the ECVP, which includes items located at sites where City Defendants know the identity of the occupant of the cleanup site.

7. Items from a cleanup vouchered by DHS shall be returned in accordance with the procedures set forth in the ECVP and paragraph 15 herein. Items from a cleanup vouchered by NYPD shall be returned in accordance with NYPD's rules and policies for the return of such

4

property including those set forth in Title 38, Section 12 of the Rules of the City of New York.

8. City Defendants shall leave a notice after conducting a cleanup ("Post-Cleanup Notice") at the cleanup site. The Post-Cleanup Notice will state the date and location of the cleanup, indicate whether items were in fact vouchered and by which agency, and provide information on how to retrieve such items. The Post-Cleanup Notice shall also indicate whether no items were vouchered.

9. All Notices of "Standard Cleanups" and Post-Cleanup Notices will be securely affixed in a clearly visible manner and include information in multiple different languages about how to obtain a full translation of the notice and a list of DHS drop-in centers where occupants may use a phone to access information about vouchered belongings.

10. For all cleanups where occupants were not on site, City Defendants will make available to Plaintiffs' Counsel, on a monthly basis: (a) a copy of the Post-Cleanup Notice; and (b) at least one corresponding pre-cleanup photo of the site showing as much of the whole site that was subject to the cleanup as possible.

11. "The List of Property Eligible for Storage" in the ECVP shall be expanded to include the following, to the extent not otherwise deemed ineligible as set forth in the ECVP:

    a. small appliances that are in good condition as determined in good faith and consistent with the ECVP by the cleanup team (items with frayed cords or other damage that may present a safety concern, in the discretion of the City staffers present, will not be vouchered);

    b. liquid hygiene products that are clearly identifiable as such and appear to have contents that are consistent with the label, as determined in good faith and consistent with the ECVP by the cleanup team; and

    c. bedding, clothing, personal effects, and other items that reasonably appear

to be the personal property of a known occupant as determined in good faith and consistent with the ECVP by the cleanup team.

12. The City shall train its ECVP cleanup teams regarding the changes to the ECVP, as set forth in this Order within four weeks of this Order being So-Ordered. Such training will include:

   a. Instruction that to the extent other individuals volunteer and are ready and willing to help an occupant move their belongings, they may do so, and that there are no restrictions based on the type of items that may be removed by an occupant or anyone assisting them during a cleanup to the extent they are not illegal for the occupant to possess under New York City, state or federal law.

   b. Instruction that cleanup teams shall not unreasonably restrict occupants from gathering, organizing, or removing their items from the immediate area, and shall not commence searching, inspecting, sorting, or removing items from the site until occupants have had a reasonable opportunity to do so.

   c. Instruction that cleanup teams are to make efforts to ensure that occupants take their essential items, including but not limited to medications, identifying documents, government agency paperwork, prescriptions, coats and sleeping bags.

   d. Instruction that, where an owner of certain property is not present, others who are present during a "cleanup" may identify that the items belong to another occupant so eligible property may be considered "identifiable" and vouchered by DHS.

   e. Instruction that cleanup teams are to consider observable limitations of occupants when implementing the requirement that they shall not unreasonably restrict occupants from gathering, organizing, or removing their items from the immediate

area.

13. City Defendants agree to make good-faith efforts to commence implementation of this agreement upon So Ordering, and Plaintiffs agree that they will not seek relief for any purported non-compliance with the provisions for which training will be required as provided in paragraphs 12(a)-(e) that occurred during the four weeks after this Order being So-Ordered.

14. Upon receipt of notice from Plaintiffs' counsel and satisfactory proof, as determined by City Defendants, which may include but is not limited to photographic and/or video proof or a statement from an individual who experienced and/or witnessed the cleanup, that a cleanup team has failed to comply with this Order, City Defendants agree to re-train cleanup teams operating in the relevant area within four weeks of receiving such notice. Such re-training, however, shall not be admissible as proof of City Defendants' alleged violation of City, State, or Federal law, or this Order.

15. DHS shall consider and may grant reasonable requests to extend the 90-day storage period set forth in section D(4) of the ECVP. When coordinating the return of property vouchered by DHS as set forth in section D(5) of the ECVP, DHS will coordinate a time and place within New York City for it to deliver the vouchered items to their owner.

16. Where this Order requires the City Defendants to produce any new materials or notices, update any materials or notices, or provide updated training to cleanup teams, City Defendants shall complete the required production, updating, and training within four weeks of it being So-Ordered. City Defendants shall provide Plaintiffs with copies of any newly-created or updated materials, including updated training materials produced to ensure compliance with Paragraph 12 of this Order, within four weeks of it being So-Ordered.

17. To the extent Plaintiffs believe that the City Defendants have not complied with the

ECVP or this Order, Plaintiffs shall provide City Defendants' counsel with written notice of any such allegations, including the time, date, and location of the alleged non-compliance to the best of Plaintiffs' knowledge, and—where Plaintiffs determine it is feasible to provide such information—any identifying information for alleged affected encampment occupants, and agree to meet and confer with City Defendants' counsel in good faith in an effort to resolve any proposed motion for non-compliance within three business days of such notice to the City Defendants before seeking any relief from the Court. Such procedure shall be a condition precedent before any Plaintiff files a motion for non-compliance herein.

18. Nothing contained herein shall be construed as an admission of liability or fault by the City Defendants.

19. This Order shall not be effective unless signed by Plaintiffs' counsel, City Defendants' counsel, and ordered by the Court.

20. This Order shall expire by its own terms nine (9) months from the date on which it is So-Ordered, unless there is a further order from the Court.

21. The parties have reviewed and revised this Order, and no rule of construction by which any ambiguities are to be resolved against the drafting party shall be applied in the interpretation of this Order.

22. This Order contains all the terms and conditions agreed upon by the parties hereto; no oral agreement entered into at any time, nor any written agreement entered into prior to the execution of this Order regarding the subject matter of the instant proceeding, shall be deemed to exist, or to bind the parties hereto, or to vary the terms and conditions contained herein.

Dated: September 24, 2025
New York, New York

| | |
|---|---|
| URBAN JUSTICE CENTER – SAFETY NET PROJECT | MURIEL GOODE-TRUFANT CORPORATION COUNSEL OF THE CITY OF NEW YORK<br>Attorney for Defendants City of New York and New York City Economic Development Corporation |

/s/ Marika Dias

Marika Dias
Estee Konor
40 Rector St, 9th Floor
New York, NY 10006
P: (646) 923-8357
E: mdias@urbanjustice.org

NATIONAL HOMELESSNESS LAW CENTER

/s/ Siya U. Hegde

Siya U. Hegde
1400 16th Street NW, Suite 425
Washington, DC 20036
P: (202) 638-2535, Ext. 105
E: shegde@homelesslaw.org

_Kerri A. Devine_ /s/

Kerri A. Devine
Assistant Corporation Counsel
100 Church Street, Room 5-175
New York, New York
(212) 356-2241
Kdevine@law.nyc.gov

BELDOCK LEVINE & HOFFMAN, LLP

/s/

Keegan Stephan
Luna Droubi
99 Park Avenue, PH/26th Floor
New York, New York 10016
P: (212) 277-5820
F: (212) 277-5880
E: kstephan@blhny.com

*Attorneys for Plaintiffs*

9

Dated: 9/25/25
New York, New York

SO ORDERED

_____
John G. Koeltl, U.S.D.J.