UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Urban Justice Center – Safety Net Project, *et al.*, <br><br> *Plaintiffs,* <br><br> -against- <br><br> The City of New York, *et al.*, <br><br> *Defendants.* | Case No. 1:24-CV-8221 (JGK) <br><br> **RULE 26(F) REPORT** |

## REPORT OF RULE 26 INITIAL CONFERENCE

   Pursuant to Rule 26(f) of the Federal Rules of Civil Procedure and this Court's Individual Practices, the following counsel of record conducted a Rule 26(f) meeting on November 3, 2025. The parties note that counsel for the State Defendant did not attend this conference because Plaintiffs and State Defendant are engaged settlement discussions and have submitted to the Court a joint request for a continuing stay of the State Defendant's time to respond to the amended complaint and a corresponding stay of litigation as to the State Defendant while the Plaintiffs and State Defendant pursue non-litigation resolution of this matter. .

| Counsel | Parties |
|---|---|
| Marika Dias<br>Estee Konor<br>Siya Hegde | Urban Justice Center – Safety Net Project, Gerard Bethel, Trese Chapman, Antonia Hayes, Eduardo Ventura, Damian Voorhees, and Abed Campos |
| Kerri Devine<br>Kevin Rizzo | City of New York, Eric Adams, Molly Wasow Park, Joslyn Carter, Javier Lojan, Jessica Tisch, Thomas G. Donlon, Sue Donoghue, Ydanis Rodriguez, Andrew Kimball, and the New York City Economic Development Corporation |

Plaintiffs and City Defendants hereby submit this report and proposed discovery plan concerning matters set forth in Federal Rule of Civil Procedure 26(f) and this Court's local rules, all of which were addressed during the parties' initial telephone conference on November 3, 2025 and subsequent telephone conference on November 14, 2025.

 A. **Nature and Bases of Claims and Defenses**

  1. **Plaintiffs' Claims**

   Plaintiffs bring this putative class action to challenge the policy and custom of "homeless sweeps," also referred to as "sweeps" and "cleanups", where Defendant City of New York ("the City"), its agents and agencies, and its "cleaning partner agencies"—including the New York State Department of Transportation and New York City Economic Development Corporation—seize and destroy the personal belongings of homeless New Yorkers residing outdoors without due process and force them to move along from relatively established locations, depriving some of the City's most vulnerable residents of their basic necessities and leaving them endangered and in peril. That policy or custom devastates thousands of homeless New Yorkers every year, across all five boroughs, and violates their rights under the Fourth and Fourteenth Amendments as well as local laws.

  2. **City Defendants' Defenses**

City Defendants maintain that plaintiffs' constitutional rights have not been violated during encampment cleanup operations and that they are immune from liability.

**B. Settlement**

A So Ordered Stipulated Preliminary Injunction is currently in place. The parties agree that settlement of the entire action, however, is unlikely at this time.

**C. Discovery Plan**

**1. Initial Disclosures under Rule 26(a)**

The parties propose that initial disclosures be completed by December 22nd.

**2. Subjects of Discovery**

One or more of the parties expect that discovery will be needed on the following non-exhaustive list of subjects: For the time period from 2017 to the present—facts regarding the City Defendants' policy and custom of conducting sweeps/cleanups, including management, execution, training, correspondence, and recordkeeping of the sweeps/cleanups process; notice and due process regarding sweeps/cleanups; damages; and *Monell* liability.

**3. Electronic Discovery**

The parties discussed issues relating to disclosure or discovery of electronically stored information ("ESI"), including pre-discovery initial disclosures, and agree to the following: (a) Disclosure or production of ESI will generally be limited to data reasonably available to the parties in the ordinary course of business; (b) the parties do not anticipate seeking data beyond what is reasonably available in the ordinary course of business; (c) the parties agree to produce ESI in accordance with the production specifications attached as Exhibit A; (d) the parties represent that that they have taken reasonable measures to preserve potentially discoverable information and/or data from alteration or destruction; (e) the parties will comply with Federal Rule of Civil Procedure 26(b)(5)(B) regarding the inadvertent production of privileged information; and (f) the parties do not at this time expect that any other problems will arise in connection with electronic or computer-based discovery. The parties have discussed and intend to enter into an ESI protocol.

**4. Timing of Discovery and Trial**

The parties have agreed to the following proposed schedule:

| Deadline or Event | Date |
|---|---|
| Mandatory Initial Disclosures | 12/22/25 |
| Motions to add parties or amend pleadings | 30 days before close of fact discovery |
| Deadline for initial set of interrogatories | 1/16/26 |

| **Deadline or Event** | **Date** |
|---|---|
| Deadline for serving initial set of production requests | 1/16/26 |
| Deadline for responding to initial production request: | 2/16/26 The parties expect to use rolling productions throughout the document production process. |
| Deadline for completing document productions and written discovery | 8/14/26 |
| Deadline for close of fact discovery, including completing fact depositions | 11/13/26 |
| Plaintiffs' Expert Disclosures | 12/11/26 |
| Defendants' Expert Disclosures | 1/8/26 |
| Plaintiffs' Expert Rebuttal Report(s) | 2/8/26 |
| Deadline for close of expert discovery, including completing expert depositions | 4/15/27 |
| Dispositive Motions | 5/7/7 |
| Oppositions to Dispositive Motions | 6/11/27 |
| Replies in Support of Dispositive Motions | 6/19/27 |
| Trial term begins | 7/2/27 |
| Estimated length of trial | 7-10 days |
| Jury/Non-Jury | Non-Jury |
| Mediation | None proposed |

5. **Forms of Discovery**

The parties anticipate that all forms of written discovery—including substantive interrogatories—and depositions may be appropriate as provided by the Federal Rules of Civil Procedure. Plaintiffs expect that certain materials produced will be in the form of electronic or computer-based media, including data, spreadsheets, and electronically-stored documents and emails. The parties at this time do not seek any restrictions on discovery beyond the limitations set forth in this agreement or the Federal Rules of Civil Procedure; however the parties agree to confer in good faith as needed regarding any proposed limitations on discovery.

6. **Discovery in Phases**

The parties agree that the first phase of discovery will be limited to discovery relevant to the claims of the named plaintiffs. The parties further agree that it would be useful to complete fact discovery before completing expert discovery.

7. **Limitations on Discovery**

The parties take the following positions regarding limitations on discovery:
Plaintiffs propose that they will take no more than 25 depositions in this case, inclusive of both fact and expert depositions. Given the large number of City Defendants in this case, this number of depositions will allow Plaintiffs to conduct discovery efficiently. Defendants propose

that they will take no more than 20 depositions in this case. The parties agree to confer in good faith should the need for additional depositions arise.

**8. Privilege Issues**

The parties have conferred and agree that a Protective Order would be useful in this case. The Parties will meet and confer and submit a stipulated Protective Order to the Court.

Dated: November 17, 2025
    New York, New York

| | |
|---|---|
| URBAN JUSTICE CENTER – SAFETY NET PROJECT | MURIEL GOODE-TRUFANT CORPORATION COUNSEL OF THE CITY OF NEW YORK<br>Attorney for Defendants City of New York and New York City Economic Development Corporation |

Marika Dias
Estee Konor
40 Rector St, 9th Floor
New York, NY 10006
P: (646) 923-8357
E: mdias@urbanjustice.org

_Kerri A. Devine_ /s/_____
Kerri A. Devine
Assistant Corporation Counsel
100 Church Street, Room 5-175
New York, New York
(212) 356-2241
Kdevine@law.nyc.gov

*Attorneys for City Defendants*

NATIONAL HOMELESSNESS LAW CENTER

Siya U. Hegde
1400 16th Street NW, Suite 425
Washington, DC 20036
P: (202) 638-2535, Ext. 105
E: shegde@homelesslaw.org

**SO ORDERED:**
_____
U.S.D.J.
11/18/25

BELDOCK LEVINE & HOFFMAN, LLP

Keegan Stephan

Luna Droubi
99 Park Avenue, PH/26th Floor
New York, New York 10016
P: (212) 277-5820
F: (212) 277-5880
E: kstephan@blhny.com

*Attorneys for Plaintiffs*

# EXHIBIT A



THE CITY OF NEW YORK
# LAW DEPARTMENT
100 CHURCH STREET
NEW YORK, NY 10007

## ESI Production Specifications as of 01/19/2023

**If compliance with these specifications is not possible or would cause undue burden, the parties should meet and confer to discuss and confirm the format of production *prior to* collection, review, and production.[1]**

### General Specifications

Unless otherwise specified, documents should be converted and produced as single-page, black and white .TIF images with a corresponding image load file provided in Opticon (Concordance Image) format. A unique production number ("Bates stamp") should be branded on each .TIF image along with its appropriate confidentiality designation, if any. Upon reasonable request, the producing party will produce documents in color on an as-needed basis to assist with readability.

Any file that is specifically requested in native format or that cannot be converted to .TIF should be produced in its original native format with a link to the native file included in the **Native Link** field within the .DAT file. A Bates-stamped, single-page .TIF placeholder indicating that the file was produced natively should be included as the corresponding image for the file that cannot be converted. The native file should be renamed to reflect the Bates number assigned to the corresponding .TIF placeholder. Some examples of files that should be provided in their native format are spreadsheets, multimedia files, and technical drawings.

All associated metadata should be produced in a .DAT load file with standard Concordance delimiters. The included chart ("Requested Metadata Fields for ESI") contains the fields that should be provided in the .DAT file.

For each produced document, all associated text (extracted or OCR) should be provided in a text file named after the starting Bates number of the document. There should be one text file per document, and a link to the text file should be included in the **Text Link** field within the .DAT file.

The folder structure of the deliverable should follow the below format:

- NYCPROD001 – top-level directory, which should be unique for every deliverable
    - DATA – subdirectory containing load files (.DAT & .OPT)
    - NATIVES – subdirectory containing files provided in native format
    - IMAGES – subdirectory containing single-page .TIF images
    - TEXT – subdirectory containing .TXT files (extracted or OCR)

Files with hidden content, tracked changes, revisions, comments, or notes should be imaged with such content viewable.

---

[1] For any social media, messages (*e.g.*, SMS, MMS, iMessage, etc.), collaboration tools (*e.g.*, MS Teams, Slack, GroupMe), mobile phone data, cloud environments (*e.g.*, Dropbox, Google Drive, One Drive, etc.), databases, or proprietary systems, the parties should meet and confer regarding the production format prior to collection, review, and production.

### Format for Placeholder Documents

Because full families (parents and children — *e.g.*, emails and corresponding attachments) should be produced together, if a document within a responsive family is fully withheld for privilege, non-responsiveness, or confidentiality, a Bates-stamped, single-page .TIF placeholder indicating either "Document Withheld for Privilege," "Document Withheld for Non-Responsiveness," or "Document Withheld for Confidentiality" should be included as the corresponding image for the withheld file. This information should also be reflected in the **Contains Slip Sheet** and **Slip Sheet Language** fields in the .DAT file.

### Email Threading

For email documents, to the extent feasible, produce only the most-inclusive emails in a thread, plus any emails within that thread that contain an attachment or only the emails within that thread that contain a unique attachment.

### Format for Redacted Documents

Files requiring redactions should be converted and produced as redacted Bates-stamped, single-page .TIF images with associated text and metadata. For each document produced with redactions, the basis for the redactions should appear in the redaction box on the as-redacted image. In addition, the appropriate metadata fields should be populated in the .DAT file. If it is not technically feasible to produce a redacted image for a particular file that requires redactions (*e.g.*, for an Excel file that must be redacted), a copy of the native file with the appropriate portions replaced with "[*the basis for the redaction*]" should be produced. If that is not feasible, the parties should meet and confer as to the best way to produce the file.

### Confidential Documents

Unless the parties agree otherwise, confidential documents must be produced in the following manner:

(i) Stamping, branding, or otherwise clearly marking documents with the appropriate confidentiality designation in a manner that will not interfere with legibility or, if applicable, audibility;

(ii) Including the appropriate confidentiality designation in the **Designation** field in the .DAT load file; and

(iii) Providing confidential documents, along with their full families, in a separate production volume with "Confidential" in the volume name.

### Document De-Duplication

A producing party should, prior to review and production, globally de-duplicate its email population using hash values (such as MD5 or SHA-1) as long as the **All Custodians** field is provided. Loose files may also be globally de-duplicated using hash values (such as MD5 or SHA-1) as long as the **All File Paths** field is provided.

# REQUESTED METADATA FIELDS FOR ESI ON NEXT PAGE

**Requested Metadata Fields for ESI\***

| FIELD NAME | DESCRIPTION | EXAMPLE |
|---|---|---|
| Production Begin | Starting Bates number of the file | NYCE00000001 |
| Production End | Ending Bates number of the file | NYCE00000005 |
| Production Begin Family | Starting Bates number of the family | NYCE00000001 |
| Production End Family | Ending Bates number of the family | NYCE00000010 |
| Page Count | Number of pages in the file | 6 |
| Native Link | Hyperlink to the native file | Z:\VOL001\NATIVES\00\NYCE00000001.doc |
| All Custodians | All custodians of the record, if global deduplication was applied during processing<br><br>A revised ALLCUSTODIANS field must be provided in the form of an overlay for any documents affected by new custodians added to the database post-production. | Doe, John; Smith, Mary; Robinson, Jane |
| All File Paths | Original path of the file<br><br>All original file paths of the record, if global deduplication was applied during processing<br><br>A revised All File Paths field must be provided in the form of an overlay for any documents affected by new documents added to the database post-production. | Path\Folder2\My Documents; Path\Folder3\SmithDocuments |
| File Name | Name of the file | My Meeting.doc |
| File Extension | Extension of the file | DOC |
| File Type | Classification assigned by the processing software | Microsoft Word Document |
| Title | Data stored in the title metadata field | Agenda for Weekly Meeting |
| Author | Data stored in the author metadata field | jdoe |
| Subject | Subject of the email or the data stored in the subject metadata field | Meeting Agenda |
| From | Email address and display name of the sender of the email | John Doe <jdoe@company.com> |
| To | Email address(es) and display name(s) of the TO field recipient(s) of the email | Frank Smith <frank.smith@mycompany.com>; Jane Doe <jane.doe@mycompany.com> |
| CC | Email address(es) and display name(s) of the CC field recipient(s) of the email | Joseph Roberts <jroberts@company.com>; Mark Smith <msmith@company.com> |
| BCC | Email address(es) and display name(s) of the BCC field recipient(s) of the email | Joseph Roberts <jroberts@company.com>; Mark Smith <msmith@company.com> |
| Attachment Names | List of files attached to the email | File 1.xls; File 3.zip |
| Date Sent | Sent date of the email | 09/15/2012 |
| Time Sent | Sent time of the email (12-hr. format) | 3:30:25 PM |
| Date Modified | Last modified date of the file, as captured by the original application or the file system | 09/09/2012 |

3

| Time Modified | Last modified time of the file, as captured by the original application or the file system (12-hr. format) | 9:30:30 AM |
|---|---|---|
| Importance | Importance property of the email | High |
| Sensitivity | Sensitivity property of the email | Confidential |
| MD5 hash | MD5 hash value of the file | D41D8CD98F00B204E9800998ECF8427E |
| Family Date | Sent date of the email or last modified date of the parent document | 09/15/2012 |
| Family Time | Sent time of the email or last modified time of the parent document (12-hr. format) | 3:30:25 PM |
| Privilege Type | Privilege associated with the document | ACC; AWP |
| Redaction Type | This field will indicate if the document contains a non-privilege redaction | PII; NR; Confidentiality |
| Contains Slip Sheet | Information as to whether the document has been slip-sheeted | Yes |
| Slip Sheet Language | Language that appears on the document slip-sheet, if any | DOCUMENT WITHHELD FOR PRIVILEGE |
| Designation | Confidentiality level of the produced document | CONFIDENTIAL; HIGHLY CONFIDENTIAL |
| Text Link | Hyperlink to the text file | Z:\VOL001\TEXT\00\NYCE00000001.txt |

*\* Fields for paper documents should be determined and agreed upon separately.*

4